[No. 5453.   Decided April 28, 1905.]

HORACE F. COMPTON et al., *Appellants,* v. CITY OF

SEATTLE et al., *Respondents.*[1]

EMINENT DOMAIN—MUNICIPAL CORPORATIONS—IMPROVEMENTS—
CHANGE OF GRADE—PROPERTY DAMAGED—TAKING. The mere construction of slopes upon abutting property, upon lowering the grade of a street, is not a "taking," but is a "damaging" only, within the meaning of Const. art. 1, § 16.

SAME—JUDGMENT OF CONDEMNATION—QUESTIONS CONCLUDED—
RES JUDICATA—APPEAL PENDING. A judgment of condemnation, assessing the damages to abutting property on account of a

1Reported in 80 Pac. 757.

change of the street grade, may be pleaded as a defense to an action to enjoin the city from proceeding with the improvement on account of alleged error in the condemnation proceeding, and is conclusive as to the amount of the damage, the propriety of the instructions given and all questions that were, or could have been, adjudicated in the former action, regardless of whether or not an appeal was properly taken therefrom; since, if the appeal was properly taken, the answer is equivalent to a plea in abatement on the ground of another action pending, and if the appeal was not taken, the judgment is *res judicata.*

Appeal from a judgment of the superior court for King county, Bell, J., entered October 20, 1904, dismissing an action to enjoin a change of grade and damage to abutting property, upon sustaining a demurrer to the plaintiff's reply. Affirmed.

*George F. Aust,* for appellants.

*Mitchell Gilliam, John K. Brown,* and *Sherwood F. Gorham,* for respondents.

CROW, J.—This action was commenced by appellants Horace F. Compton and Anna B. Compton, his wife, against the city of Seattle, a municipal corporation, and R. H. Thomson, A. Lincoln Walters, and Luther B. Young, as members of the board of public works of said city, respondents, to enjoin said respondents from entering upon, taking, and damaging certain real estate of appellants. The complaint alleges, that appellants were, at the time of filing said complaint, and had been at all times for ten years prior thereto, the owners in fee simple of the easterly one hundred and eight feet of lot 4 in block 48 of Bell & Denny's Third Addition to the city of Seattle, King county, Washington; that at all of said times they had been, and were still, in the actual, notorious, and peaceable possession thereof; that said lot abuts on Second avenue, extending along the easterly side there-

of a distance of sixty feet; that there were situated on said lot two houses, one of the value of $1,500, and one of the value of $2,500; that the value of the aforesaid lot, exclusive of said buildings, was $8,000, and that the value of said westerly seventy-seven feet, exclusive of any improvements, was at least $7,000; that Second avenue was a graded and sidewalked street in said city, and had been continuously in use as such for more than ten years; that said street immediately in front of said lot was about seventeen feet below the surface thereof, and that, by means of steps, easy access was had to the houses situated thereon; that the respondents have ordered a change in the grade of said Second avenue, which will cause a further excavation or cut in front of said lot, to a depth of forty-four feet, so that the surface of said street will be at least seventy-seven feet below the average surface of said lot; that, in cutting down said street, respondents are claiming the right to go upon the westerly seventy-seven feet of said lot, and cut away the surface thereof, so as to leave the same sloping from the surface of said street, as the same shall be re-graded, back upon said lot at an angle of forty-five degrees, thereby occupying the westerly seventy-seven feet of said lot with said slope; that respondents claim the right to establish and maintain said slope at their pleasure, to remove all improvements now upon said westerly seventy-seven feet, and to exclude plaintiffs therefrom; that, unless restrained, respondents will take physical possession of said lot to within thirty-one feet of the easterly line thereof, and will proceed to tear down and remove said buildings, and wholly remove and destroy all improvements upon said seventy-seven feet, taking full and exclusive possession thereof; that the first of said buildings is situated wholly upon said seventy-

seven feet; that the second of said buildings is so situated that ten feet of the front thereof extends over and upon said seventy-seven feet; that respondents claim to have an estate in all of said lot except the easterly thirty-one feet thereof, and to have the sole and absolute right to use and control the same; that said threatened acts of respondents will destroy valuable property rights of appellants in and to the entire one hundred and eight feet, and cause them irreparable loss, in the sum of $12,000 unless respondents be enjoined from doing said work; that the claims of respondents are publicly made and constitute a cloud upon appellants' title, so that much of the value of said property is destroyed. Appellants asked for an injunction restraining respondents from prosecuting said work, and also demanded other equitable relief.

To this complaint respondents, on October 13, 1904, filed an amended and supplemental answer, in which, after making certain denials, they, by way of a separate further and affirmative defense, alleged that on the 2d day of March, 1903, the council of said city duly passed an ordinance No. 9311, entitled:

"An ordinance providing for the opening, widening and altering, and for making changes in the grade of Second avenue and Second avenue North, and contiguous and proximate cross streets; and for the construction of all slopes or retaining walls for cuts and fills upon real property abutting on said avenue and said cross streets, between Pike street and John street, in the city of Seattle; and providing for the taking and damaging of land and other property necessary therefor, and for the ascertainment and payment of the just compensation to be made for the private property to be taken or damaged for said purpose; and for an assessment upon the property specially benefited for the purpose of making such compensation;

and authorizing the corporation counsel to employ an assistant in prosecuting said proceedings."

Section 2 of said ordinance, *inter alia*, provided, that

"All lands, rights and privileges and other property within the limits of the above bounden and described territory, necessary to be used for the construction of slopes or retaining walls for cuts and fills upon real property abutting on any street or avenue in said above described territory, are hereby condemned and appropriated to the public use for the purposes of the construction of said slopes or of said retaining walls, for such length of time as such slopes or such retaining walls may be necessary to protect said avenue from slides which may occur upon real property abutting," etc.

Respondents further alleged, that said ordinance is in full force and effect; that, in pursuance of the provisions thereof, the corporation counsel of said city did, prior to the commencement of this action, file in the superior court of King county, Washington, a petition in condemnation proceedings, praying that compensation be made for private property to be taken or *damaged* for the purposes mentioned in said ordinance, the same to be ascertained by a jury, or by the court in case a jury be waived; that said petition in all respects complied with the act of the legislature of the state of Washington entitled,

"An act to enable cities of the first class to exercise the right of eminent domain for the taking and damaging of land and property for public purposes, providing a method for making compensation therefor, and providing for special assessments in certain cases upon property benefited, and declaring an emergency,"

approved March 9, 1893 (Bal. Code, § 775, *et seq.*); that in said condemnation proceeding appellants appeared by their attorney; that trial was had before said court and a jury; that the damages to appellants' said lot by reason

of the improvements ordered and directed to be made
in the ordinance above mentioned were assessed by said
jury in the sum of $1,800; that a motion for a new trial
was overruled; that judgment was duly entered on March
5, 1904, in favor of appellants and against said city of
Seattle, for said sum of $1,800, as the damages sustained
by appellants by reason of said improvements; that said
judgment has, ever since the entry thereof, been and is
now in full force and effect, and that no appeal has been
taken therefrom; that subsequent to the commencement of
this action, and subsequent to the serving and filing of the
original answer herein, the superior court of King county,
by an order duly made and entered in said condemnation
proceeding, on the 13th day of October, 1904, directed
payment of said sum of $1,800, costs and interest, to be
made into court by depositing the same with the clerk there-
of for the use and benefit of appellants, and that said
payment was made on said date; that in addition to said
$1,800, the sum of $200 was awarded and paid in said
condemnation proceedings, for property of said appellants
taken by the city for the purpose of widening said Second
avenue, and that, on said 13th day of October, 1904, the
said court in said condemnation proceeding, by an order
duly made, directed that the said city of Seattle have, and
shall have, the right to damage said premises described in
the manner directed by said ordinance No. 9311; that the
said improvement will necessitate the lowering of the grade
of Second avenue in front of said lot, to such an extent
that the present surface of said lot will be at an elevation
of about seventy-seven feet above the level of said avenue;
that unless the surface of said lot is caused to slope back
from the margin of said avenue, to the extent of one foot
horizontally for each foot of the vertical height of the

surface or said lot, the soil of said lot will not maintain itself, but will slide into said street, and cause said city to be liable for damages to appellants by reason thereof, and that for the purpose of constructing and erecting an embankment of earth upon said lot, and for no other purpose, was the right of the city to construct said slope condemned in the said proceeding; that in said condemnation proceeding the damage to said lot, by reason of construction of said slope, and the damage which might be done to said houses upon said lot, were each and all presented to and considered by the court and jury, and were the basis of the verdict rendered and the jugment entered therein as aforesaid; that none of the respondents claim any right, title, or interest in or to said lot or any part thereof; nor do they, or any of them, claim any right of possession or occupation of the said lot or any part thereof; nor do they, or any of them, claim any right whatsoever to enter upon said lot for any other purpose than to carry out the provisions of said ordinance No. 9311.

Appellants demurred to said affirmative defense, which demurrer being overruled, they filed a reply, in which they substantially admitted the allegations of the answer; but, by way of affirmative reply, alleged that, in said condemnation proceedings, appellants appeared by their attorney and participated in the trial; that the court, over the objections of appellants, ruled that said ordinance No. 9311 did not seek to "take" property mentioned in the complaint, but that on the contrary it only sought to "damage" the same, and that the houses situated on said property would not be *"taken,"* but would be *"damaged"* only. Appellants also, in their reply, set forth certain requests for instructions made by them in the condemnation suit, and allege that such instructions were refused,

which refusal was alleged to be error.   They also set forth
in full the instructions given, and alleged that appellants
excepted to the refusal to give instructions requested, and
also excepted to the instructions given.  The reply further
pleaded in full the two judgments entered in said condem-
nation proceeding in favor of the city, dated respectively
March 5, 1904, and October 13, 1904, and alleged that,
at the time of the signing of the one last mentioned, ap-
pellants in open court gave notice of appeal to this court,
and that their appeal is now pending.   Other allegations
were made in the various pleadings, but we have stated all
necessary for consideration here.   Respondents interposed
a demurrer to the affirmative reply, which being sustained,
appellants elected to stand upon their pleadings.   There-
upon final judgment was entered, dismissing this action
and awarding costs to respondents.   From said judgment,
this appeal has been taken.

Appellants make several contentions, the substance of
the same being, (1) that the act of the city in entering
upon said seventy-seven feet and constructing said slope
is not merely a *"damaging"* of the real estate, but is a
*"taking"* thereof, for which appellants have not been com-
pensated in the manner required by § 16, art. 1, of our
state constitution; (2) that the city is not authorized to
take for slopes; (3) that the issues herein set forth have
not been finally adjudicated in the condemnation proceed-
ing.   Other contentions have been made by appellants, but
the above are the substance of their arguments.   Respond-
ents contend, (1) that all of the matters presented by the
appellants' pleadings herein are *res judicata;* (2) that the
construction of the slope running back on plaintiffs' prem-
ises from the margin of the street is not a *"taking"* of
that portion of said premises, but is a *"damaging"* only,

within the meaning of the constitution, and said act of 1893.

After a diligent examination of the record, and a careful consideration of the briefs, arguments of the parties, and the authorities, we are of opinion that both contentions made by the respondents are correct. While we do not regard it as necessary to consider whether or not the damaging of appellants' lot by the grading of said slope would be a taking of his property, the question of former adjudication being decisive of this case, nevertheless we will state it has heretofore been held by this court in *Brown v. Seattle,* 5 Wash. 35, 31 Pac. 313, 32 Pac. 214, 18 L. R. A. 161, and *Swope v. Seattle,* 36 Wash. 113, 78 Pac. 607, that the word "damaged," used in § 16, art. 1, of the constitution, does not mean the same as "taken." The construction of slopes such as are in contemplation here is not necessarily a *"taking,"* but is a *"damaging"* merely. Formerly in the constitutions of most of the states, the word "damage" did not occur, but *"taking"* only was mentioned. Under such constitutions, many courts of the Union, in order to do justice and prevent what might otherwise be held to be merely *damnum absque injuria* in the eyes of the law, frequently extended the meaning of the word "taking" beyond its original and strict construction, and applied it to almost any act by which the land of an individual, although not physically taken, sustained a special injury, decreasing its value. The word "damaged," or its equivalent, has, however, during later years been incorporated in the constitutions of many states and is found in our constitution, in § 16, art. 1. This word certainly has some meaning, as distinguished from the word "taken." In *Swope v. Seattle, supra,* Anders, J.. used the following language:

"It appears from the bill of exceptions, as we interpret it, that the plaintiffs claimed at the trial that the removal of the soil taken from the plaintiffs' premises in sloping the margins thereof constituted a taking of property in contemplation of the constitution, and that they were entitled to recover the actual value to them of the earth so removed, together with the damage to the land not taken, which would be caused by the grading of the streets. The court, however, seems to have ruled that the effect of what the defendants were doing was simply a damage to the plaintiffs' property. And we are inclined to think that the court's ruling was correct."

See, also, *Chicago v. Taylor,* 125 U. S. 161, 8 Sup. Ct. 820, 31 L. Ed. 638.

If there were no condemnation of the right to damage appellants' lot by constructing slopes, the result would be a cut seventy-seven feet deep in front of their premises, with perpendicular banks on either side of the street. But, as suggested by respondents in their brief, experience has shown that in such cuts the soil will fall and slide into the street, and then, as has been held by this court in *Parke v. Seattle,* 5 Wash. 1, 31 Pac. 310, 32 Pac. 82, 34 Am. St. 839, 20 L. R. A. 68, the city would be liable for damages to the lot caused by removing the supporting earth. To guard against such a contingency, the city, under the provisions of § 16, art. 1 of the constitution, the act of 1893, and said ordinance No. 9311, has caused the damages of appellants to be ascertained in advance, and has paid the same into court, thereby obviating any liability to future actions. Appellants are not excluded from that portion of their premises covered by the slope, they are paid for the damage to their lot caused by its construction, and can, when it is constructed, use said lot in any way compatible with the safety and free use of the adjoining street. They may excavate their full lot to the

street level, or do any act which will not be inconsistent with the right paid for by the city to have a passable street in front of their lot. It is evidently the intention of the city to maintain said slope for such length of time only as may be necessary to protect said street from slides which might occur upon abutting property.

The principal question, however, is whether the condemnation proceeding as to all the issues involved in this action is *res judicata*. There is some dispute between appellants and respondents as to whether a proper or valid appeal has been taken from the condemnation proceeding. Apparently respondents entertain the view that the appeal should have been taken from the first judgment entered March 5, 1904, ascertaining the amount of the damages; while appellants are of the opinion that the appeal taken by them from the final order or judgment entered October 13, 1903, is proper and brings up for review by this court all questions decided in said action. We do not at this time express any opinion as to the sufficiency or insufficiency of said appeal, it not being necessary or proper for us to do so. If the appeal has been properly taken, all of appellants' rights can be adjudicated when it is heard in this court. If said appeal has not been properly taken, then the condemnation proceedings are, in our opinion, *res judicata*.

"The rule is well settled that a judgment of a court of competent jurisdiction, delivered upon the merits of a cause, is final and conclusive between the parties in a subsequent action upon the same cause, not only as to all matters actually litigated and determined in the former action, but also as to every ground of recovery or defense which might have been presented and determined therein. This rule is applied both at law and in equity. Thus, a court of equity will not grant a relief which might have been had in a prior action at law; nor, on the other hand,

will a court of law entertain an action for a cause which might have been taken advantage of in a prior suit in equity." 24 Am. & Eng. Ency. Law (2d ed.), 781.

"Where jurisdiction has attached by due service of the petition and notice, and an award is regularly made, and. is not appealed from, the rights of the respective parties become definitely fixed by the judgment, and it is conclusive and binding on all parties of record, their privies and. grantees, including the successor of the petitioner, unless appealed from. The parties and their privies are concluded as to all matters which were put in issue, or might have been put in issue, in the condemnation proceedings, . . ." 15 Cyc. 923.

See, also, *Sayward v. Thayer,* 9 Wash. 22, 36 Pac. 966, 38 Pac. 137; *Kromer v. Friday,* 10 Wash. 640, 39 Pac. 229, 32 L. R. A. 671; *State ex rel. Ledger Pub. Co. v. Gloyd,* 14 Wash. 5, 44 Pac. 103; *Wiseman v. Eastman,* 21 Wash. 174, 57 Pac. 398; *Cromwell v. County of Sac,* 94 U. S. 351, 24 L. Ed. 195; *Burke v. City of Kansas,* 118 Mo. 309, 24 S. W. 48; *Stronsky v. Hickman,* 116 Iowa 651, 88 N. W. 825.

We fail to see that appellants have raised a single question by the pleadings in this action which was not raised, or could not have been properly raised and adjudicated in the condemnation proceeding. In fact, the instructions set forth in the reply, which appellants allege were requested by them and refused, show they asked the court to charge that the construction of said slopes was a *"taking"* and not a *"damaging."* They also, by requested instructions, asked for the full value of said seventy-seven feet over and above all benefits, and that damages for said buildings be ascertained and fixed at their full value, on the theory that said seventy-seven feet and said buildings were taken. If it was error to refuse these instructions in the condemnation proceeding, appellants could have

such errors reviewed by this court on appeal. If a proper appeal has been taken, they will be so reviewed, and the question as to whether or not errors prejudicial to the rights of appellants have been committed will be deter- mined; and the answer of the respondents is equivalent to a valid plea in abatement on the ground of another action pending. If a proper appeal has not been taken, then all the questions and issues raised by the pleadings have be- come *res judicata.* In *Burke v. City of Kansas, supra,* an equitable action similar in many respects to this, the fourth syllabus reads as follows:

"A judgment in a condemnation case, the court having jurisdiction of the subject-matter and of the parties, is conclusive against collateral attack by the latter, though the judgment may be erroneous on its merits, or irregular in its form."

In *Stronsky v. Hickman, supra,* the facts show that a public highway had been established and opened for many years across Stronsky's land; that said highway cut off a small triangular portion thereof, upon which certain build- ings were located, and that certain citizens petitioned the board of supervisors to establish a new road which would run across this small portion of his land. Stronsky, the plaintiff, appeared and filed a claim for damages in the sum of $1,500. Appraisers were appointed and ascer- tained his damages to be $25, and no appeal was taken by him. Under a statute of Iowa, no buildings of an owner of property could be removed in establishing a road with- out the consent of such owner. Stronsky commenced an action in equity to enjoin the opening of the public road, on the theory that he had not consented to the removal of his buildings. In dismissing the action, the supreme court of Iowa said:

"It will be further observed that the same statute which provides that a road shall not be established 'so as to cause the removal of any building without the owner's consent' also provides (section 1493, Code) for the fixing of the date before which 'all objections to the establishment' of the road as well as all claims for damages shall be filed. It is further provided (section 1495, Code) that written notice be duly served, as in the case of original notices, upon each abutting landowner, requiring him before the day fixed to file 'all his objections' to the road with the auditor, and upon failure so to do 'such road will be established without reference thereto.' The appellant was duly served with such notice. He was then, if we may use that expression, 'in court.' The fact that the road would cause the removal of his barn was a proper objection to its establishment, if he saw fit to make it. It was not an objection to the jurisdiction of the board, but it was more in the nature of a defense upon the merits—a plea in bar. If, notwithstanding such defense, the board persisted in establishing the road, then appeal or certiorari, as the case may be, would have afforded him an efficient remedy. Having failed to comply with the notice and file his objections, the board was justified in ordering the establishment 'without reference thereto.' "

Under the authorities above mentioned, and many others which we have examined, we think all questions sought to be litigated by appellants in this action are *res judicata*, or can be considered by this court on appeal from the judgment in the condemnation proceedings, if an appeal has been properly taken and perfected. Said condemnation proceedings cannot be collaterally attacked, nor can errors alleged to have been committed therein be reviewed in this action. We are also of the opinion that the entering upon said lot, and the constructing of said slope by respondents in pursuance of said condemnation proceedings, was not a *"taking"* of the property of appellants, but was a "damag-

ing" thereof, as contemplated by the constitution and laws of this state.

We find no error in the record, and the judgment of the superior court is therefore affirmed.

MOUNT, C. J., DUNBAR, RUDKIN, and ROOT, JJ., concur.

HADLEY and FULLERTON, JJ., took no part.